**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW JERSEY PHYSICIANS UNITED RECIPROCAL EXCHANGE d/b/a NJ PURE<br><br>Plaintiff<br><br>v.<br><br>ACE UNDERWRITING AGENCIES LTD, et al.<br><br>Defendants | Civil Action No. 12-04397 (FLW/LHG)<br><br>**OPINION** |

**WOLFSON, United States District Judge:**

New Jersey Physicians United Reciprocal Exchange ("NJ Pure" or "Plaintiff") filed a complaint on July 13, 2012, claiming that Defendants[1] breached a 2007 reinsurance contract ("2007 Contract") between the parties, under which Defendants owe Plaintiff $2,309,431.[2] Specifically, Plaintiff contends that, in contravention of the 2007 Contract, Defendants have offset, from the amount they owe Plaintiff under the 2007 Contract, the amount of $1,894,076 allegedly owed to Defendants by Plaintiff under a 2004 reinsurance contract ("2004 Contract"); Plaintiff seeks a declaratory judgment that

---

[1] Ace Underwriting Agencies Ltd., Amlin Underwriting Ltd., Catlin Insurance Company Ltd., Faraday Underwriting Ltd., and Catlin Underwriting Agencies Ltd..

[2] At the time of the filing of the Amended Complaint, the amount owed by Defendants was $2,309,431. However, Defendants have subsequently made payments and other amounts have come due, leaving $2,117,704 due under the 2007 Contract. Chang Decl. ¶ 8.

1

such an offset is in violation of the 2007 Contract. On October 26, 2012, Defendants moved to dismiss the complaint or stay the pending litigation on the ground that Plaintiff's claims are subject to arbitration pursuant to the 2007 Contract's Arbitration Clause and the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA").

For the reasons stated below, the Court finds that Plaintiff's claims are subject to arbitration, and will stay the litigation pending the outcome of such arbitration.

## BACKGROUND

NJ Pure and Defendants entered into a First Excess of Loss Reinsurance Contract, effective January 1, 2004 to January 1, 2007.[3] Rush Cert., Ex. A. Under the 2004 Contract, Defendants agreed to reinsure a portion of NJ Pure's liabilities under medical professional liability policies issued by NJ Pure. Rush Cert., Ex. A, Art 1. The premium to be paid to the participating reinsurers was subject to annual adjustments. *Id.* at Art. 14. Defendants claim that they are entitled to an additional adjustment premium under the 2004 Contract in the amount of $1,894,076. Am. Compl. ¶ 45. NJ Pure disputes this amount. Am. Compl. ¶ 44. That claim is proceeding in arbitration. Rush Cert., Ex. C.

NJ Pure and Defendants entered into another First Excess of Loss Reinsurance Contract, effective January 1, 2007 to December 31, 2009. Compl. Ex. I. Plaintiff contends that Defendants owe it $2,117,704, arising from losses and premium adjustments under this contract. Chang Decl. ¶ 8. Defendants do not dispute this claim, but instead argue that they should be permitted, pursuant to the "Offset Provision" in the

---

[3] Three reinsurers participating in the 2004 Contract did not participate in the 2007 Contract. Am. Compl. ¶¶ 23, 26. The five Defendants here participated in both.

2007 Contract,[4] to offset the amount they owe to NJ Pure under the 2007 Contract with the amount they allege is owed to them under the 2004 Contract.[5] The Offset Provision provides, in relevant part:

> The Company and the Reinsurer, each at its option, may offset any balance or balances, whether on account of premiums, claims and losses, loss expenses, or salvages due from one party to the other under this Contract[.]

Am. Compl. Ex. I, Art. 18 [2007 Contract].

Furthermore, Defendants argue that any dispute as to whether such an offset is permissible is subject to arbitration. The Arbitration Clause states, in relevant part:

> As a condition precedent to any right of action hereunder, all disputes or differences arising out of or connected with this Contract (whether or not arising before or after termination) except as to its actual formation or validity but including interpretation or implementation of its terms shall, upon the written request of either party, be submitted to three arbitrators[.]

Am. Compl. Ex. I, Art. 21 [2007 Contract].

Plaintiff counters that the amounts owed to it and any amounts allegedly owed by it to Defendants arise under two different contracts, and therefore the offset is impermissible pursuant to the Offset Clause in the 2007 Contract. It also argues that, in cases such as this, where money is "claimed to be due," the "Service of Suit" clause allows it to file suit rather than submit to arbitration. The Service of Suit clause reads, in relevant part:

> It is agreed that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the

---

[4] While both the 2004 and 2007 Contracts contain the same Offset Provision, Arbitration Clause, and Service of Suit Clause, Plaintiff filed suit alleging breach of the 2007 Contract only, and thus, the 2007 Contractual provisions are directly at issue.

[5] Defendants have approved payment of all outstanding amounts in excess of the amount of the offset Defendants claim under the 2004 Contract. Follet Aff. ¶ 4.

3

> request of the Reinsured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

Am. Compl. Ex. I, Art. 22 [2007 Contract].

Accordingly, Plaintiff commenced this litigation on July 13, 2012.

On September 25, 2012, Defendants initiated arbitration against NJ Pure by serving an Arbitration Demand. Rush Cert., Ex. B. Defendants sought to arbitrate 1) the disputed premium adjustment under the 2004 Contract and 2) the offset issue under the 2007 Contract. NJ Pure has agreed to arbitrate the first issue, but has refused to arbitrate the second. Rush Cert., Ex. C.

## DISCUSSION

The FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration." *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (citing *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)); *see also* 9 U.S.C. § 3. Under the FAA, "[a] party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *Alexander*, 341 F.3d at 263. "An order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Medtronic Ave, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 55 (3d Cir. 2001). New Jersey state law also embraces this strong policy favoring arbitration. "New Jersey courts favor arbitration as a means of resolving disputes, embracing the federal policy preferring this method of alternative dispute resolution." *Curtis v. Cellco Partnership*, 413 N.J. Super. 26, 34 (App. Div., 2010); *see also Martindale v. Sandvik, Inc.*, 173 N.J. 76, 84 (2002) ("[I]n deciding whether to enforce the arbitration provision … we rely on the

well-recognized national policy and the established State interest in favoring arbitration.").

### A. Scope of the Arbitration Clause

The Third Circuit has summarized the limits of a court's role in determining whether a case should be arbitrated as follows:

> [T]he question of "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." … [W]hereas one might call any potentially dispositive gateway question a "question of arbitrability," "the phrase … has a far more limited scope." Such questions of arbitrability are raised only in "narrow circumstance[s]" where courts must determine "gateway matter[s]," such as a dispute about "whether the parties are bound by a given arbitration clause" or … "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."

*Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)). In other words, " 'only when there is a question regarding whether the parties should be arbitrating at all is a question of arbitrability raised for the court to resolve, and ... '[i]n other circumstances, resolution by the arbitrator remains the presumptive rule.' " *Gay v. Creditinform*, 511 F.3d 369, 387 (3d Cir. 2007) (quoting *Westchester Fire Ins. Co.*, 489 F.3d at 585). When a court is "asked to stay proceedings pending arbitration[, it] must determine whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement." *Medtronic AVE, Inc.*, 247 F.3d at 55. This role is even more limited "when the parties have agreed to submit all questions of contract interpretation to the arbitrator. [The court] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is

governed by the contract." *Id.* As the Arbitration Clause at issue here leaves interpretation of the 2007 Contract to arbitration, and neither party disputes the validity of the Arbitration Clause, the two issues before this Court are whether the parties' dispute falls within the scope of the Arbitration Clause, and whether the Service of Suit Clause is an exception allowing Plaintiff to file suit in lieu of arbitration.

The Arbitration Clause here is extremely broad. It states:

> As a condition precedent to any right of action hereunder, all disputes or differences arising out of or connected with this Contract (whether or not arising before or after termination) except as to its actual formation or validity but including interpretation or implementation of its terms shall, upon the written request of either party, be submitted to three arbitrators[.]

Am. Compl. Ex. I, Art. 21 [2007 Contract].

The Clause explicitly applies to *all* disputes and *all* differences arising out of or *connected* with the Contract. Plaintiff contends that there is no dispute under the 2007 Contract because Defendants concede they owe the money upon which Plaintiff sues. While it is true that the amount due under the 2007 Contract is not disputed, what is disputed is whether that amount may be offset by the amount allegedly owed to Defendants under the 2004 Contract. This dispute is certainly one *connected* with the Contract. As Plaintiff notes, "terms within a reinsurance contract … must be given their plain, ordinary meaning." Plaintiff's Opposition to Defendants' Motion to Dismiss, at 10 (citing *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Op. Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). Giving the words 'all,' 'disputes,' and 'connected' their plain and ordinary meanings leads to the conclusion that the dispute currently before the Court clearly falls under the purview of the Arbitration Clause. Furthermore, to the extent any doubts remain about the scope of the Clause, those doubts "should be resolved in favor of

6

arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

Perhaps more significantly, the Arbitration Clause explicitly applies to the interpretation of the Contracts' terms. Plaintiff focuses on the language in the Offset Clause of the 2007 Contract that permits the parties to offset money "due from one party to the other *under this contract*." Am. Compl. Ex. I, Art. 18 (emphasis added). Whether the words "under this contract" limit the parties to offsets arising only from the 2007 Contract, or, as the Defendants apparently contend, includes offsets from another contract – the 2004 Contract – is at the heart of Plaintiff's claim.  Thus, the dispute devolves from an issue of contract interpretation – a matter left to arbitration by Article 21 of the 2007 Contract.  Furthermore, the Arbitration Clause expansively requires arbitrators to "interpret th[e] Contract as if it were an honourable engagement and not merely a legal obligation, and they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view to effecting the general purpose of this Contract in a reasonable manner rather than in accordance with a literal interpretation of the language." Am. Compl. Ex. I, Art. 21.

Virtually all of Plaintiff's claims and arguments relate to its interpretations of the Contract's terms. As explained *supra*, the Court's role "is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. [The court] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Medtronic AVE, Inc.*, 247 F.3d at 55. Here, Plaintiff seeks a declaratory judgment asking this Court to endorse its interpretation of

7

the Offset Provision – specifically, that the Defendants cannot offset money they owe under the 2007 Contract with money they are allegedly owed under the 2004 Contract. This is plainly a dispute based on the interpretation of the contractual terms. Plaintiff's breach of contract claim also requires the interpretation of contractual terms, as no decision can be reached on whether the Defendants breached the 2007 Contract without first interpreting the Offset Provision. Even if the Court were to find that NJ Pure's claim for payment is subject to litigation pursuant to the Service of Suit Clause,[6] such a claim is inextricably intertwined with the offset dispute, which is plainly subject to arbitration. "If the allegations underlying the claims 'touch matters' covered by [an arbitration clause in a contract], then those claims must be arbitrated, whatever the legal labels attached to them." *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Inc.*, 815 F.2d 840, 846 (2d Cir. 1987). Therefore, pursuant to this Court's limited authority when faced with such a broad arbitration provision, I find that the instant dispute falls within the scope of the Arbitration Clause.

**B. Relevance of the Service of Suit Clause**

Plaintiff contends that the Service of Suit clause serves as an exception to the Arbitration Clause and thus, this case may proceed in this forum. In construing contract language and the interplay between contract provisions, courts must "take[] care not to render other portions of a provision or contract superfluous." *New Castle County, Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 174 F.3d 338, 349 (3d Cir. 1999) (citing Restatement (Second) of Contracts § 203(a) (1979)). When it comes to the relationship

---

[6] As will be discussed *infra*, the Court does not agree with Plaintiff's interpretation of the Service of Suit Clause that Plaintiff may proceed with litigation in lieu of arbitration.

between arbitration clauses and service of suit clauses, courts have found, with few exceptions, that Service of Suit clauses do not negate broad arbitration provisions.

In 2009, the Third Circuit wrote that "service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 554 (3d Cir. 2009). Similarly, in considering whether a forum selection clause operated as a waiver of an arbitration agreement in certain circumstances, the Third Circuit wrote in *Patten Securities Corp., Inc. v. Diamond Greyhound & Genetics, Inc.* that "there is nothing inconsistent between the arbitration obligation and the instant forum selection clause. Both can be given effect, for arbitration awards are not self-enforceable. They may only be enforced by subsequent judicial action. Thus, even if arbitration is completed, the forum selection clause would appear to dictate the location of any action to enforce the award." 819 F.2d 400, 407 (3d Cir. 1987) (*abrogated* on other grounds *by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988)).

Plaintiff seeks to distinguish *Patten* on two grounds, but neither basis is convincing. Plaintiff simply restates its argument in conclusory terms by claiming that *Patten* is distinguishable because, contrary to the forum selection clause in *Patten*, the Service of Suit clause at issue here is not meant to facilitate enforcement of the arbitration clause, but instead is meant to permit litigation. Secondly, Plaintiff claims that *Patten* is inapplicable because the arbitration clause and forum selection clause at issue there were in entirely different contracts, so it may have been unclear to the securities issuer in *Patten* that it was entitled to arbitration, and thus the *Patten* court merely sought

9

to protect the issuer from unknowingly waiving its right to arbitration through *Patten*'s forum selection clause. Indeed, the *Patten* court wrote that "[a] party signing a waiver must know what rights it is waiving," and that because no reference was made to the arbitration provision in the forum selection clause, "[i]t cannot be said that [the party seeking arbitration] … knew that it was waiving its contractual remedy of arbitration." *Patten*, 819 F.2d at 407. However, even this limited interpretation of the holding in *Patten* does not meaningfully distinguish it from the facts of the case at hand. It seems highly unlikely that the Defendants here would secure an extremely broad Arbitration Clause, with listed exceptions, and then, in the very next clause, *knowingly* create another exception – without even mentioning the Arbitration Clause – that substantially narrows and essentially eviscerates the Arbitration Clause. At best, the Service of Suit Clause is ambiguous, and as the *Patten* court noted, consistent with the federal policy favoring arbitration, a "forum selection clause must be scrutinized carefully, and if doubts arise as to whether [a] dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability." *Id.* This is especially true when the clauses are not inconsistent and both the Arbitration and Service of Suit clauses can be given effect, as explained *infra*.

Courts in this and other circuits have consistently found an arbitration clause to be enforceable in agreements that also contain a service of suit clause. *See, e.g.*, *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda)*, 79 F.3d 295, 298 (2d Cir. 1996) (noting that the principal effect of a service of suit clause is to resolve the issue of personal jurisdiction over a foreign association because an arbitration award cannot be enforced without access to the courts); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1204-05 (5th Cir. 1991) (explaining that a

10

Service of Suit clause did not waive an arbitration provision, but instead was designed to ensure that an insured may obtain personal jurisdiction over its foreign insurer to enforce arbitration awards or to litigate disputes that are not actually arbitrated); *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971); *NECA Ins. Ltd. V. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 595 F. Supp. 955, 958 (S.D.N.Y. 1984); *West Shore Pipe Line Co. v. Associated Elec. And Gas Ins. Serv. Inc.*, 791 F. Supp. 200, 203-04 (N.D. Ill. 1992). In particular, I find persuasive the Fifth Circuit's interpretation in *McDermott*, which also found that the Service of Suit Clause can be interpreted as governing the forum for disputes not arbitrated, including disputes the parties choose not to arbitrate.

The Arbitration Clause here requires either party to make a written request for arbitration. If neither party requests arbitration of a certain dispute, the Contract's Service of Suit clause would come into play to determine the jurisdiction under which such dispute would be litigated.  In the instant case, this interpretation is strengthened by the lack of a forum selection clause in either Contract. By addendum executed by the parties, effective January 1, 2005, the parties amended the Choice of Law provision to delete language giving the courts of New Jersey exclusive jurisdiction over the 2004 Contract. Rush Cert., Ex. A, at 8. This language was further omitted from the 2007 Contract. While I make no findings or inquiries into the parties' reasons for deleting this language, the deletion of the forum selection language from the Choice of Law provision renders plausible that the Service of Suit clause was meant to serve as a forum selection clause. Thus, the Arbitration Clause and Service of Suit clause can be read in harmony: the Arbitration Clause covers all disputes, but if either party should need to turn to the courts

11

to compel arbitration or enforce an arbitration award, or the parties opt out of arbitration, the selection of a forum is governed by the Service of Suit clause.

Further bolstering the interpretation that the Service of Suit clause is not meant to serve as an exception to the Arbitration Clause is the fact that the Arbitration Clause makes arbitration a "condition precedent" to any right of action under the Contract. If Plaintiff's interpretation of the Service of Suit clause were correct and Plaintiff were permitted to sue as a first step for money "claimed to be due," that would not only render the "condition precedent" language meaningless, it would sap an otherwise purposefully broad Arbitration Clause of much of its reach. I am not persuaded that either party intended this result. My interpretation, on the other hand, as well as the well-reasoned interpretation of courts both in and outside of the Third Circuit, leaves both clauses intact and serving important, independent roles.

Plaintiff makes several arguments against this interpretation of the Service of Suit clause. First, Plaintiff relies on the doctrine of *contra proferentium*, which provides that "where a term in an insurance policy is ambiguous, giving rise to two equally plausible interpretations, the term will be given the meaning that results in coverage." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 817 F. Supp. 1136, 1155 (D.N.J. 1993). This is so because "insurance carriers generally draft the language of these policies on their own," and "New Jersey law considers standard form insurance policies to be contracts of adhesion." *Id.* The doctrine is meant to protect the "insured's objectively-reasonable expectations." *Vorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165,

175 (1992). However, based upon the factors set forth below, I find the doctrine of *contra proferentum* does not apply here.[7]

There are important differences between the reinsurance contract at issue here and the standard form insurance policies considered to be contracts of adhesion under New Jersey law. Significantly, "[r]einsurance contracts are clearly more in the nature of indemnity agreements between two sophisticated insurance companies than contracts of adhesion." *British Ins. Co. of Cayman v. Safety Nat'l Cas. Corp.*, 335 F.3d 205, 213 (3d Cir. 2003); *see also Gazis v. Miller*, 378 N.J. Super. 59, 65 (App. Div. 2005) (noting that "reinsurance agreements are not contracts of adhesion."). In addition, NJ Pure itself appears to fall under the definition of an insurer, which puts it in a different position than a standard, unsophisticated insured party. N.J.S. § 17:23B-1 (including "reciprocal exchange" in the definition of insurer). Finally, application of the *contra proferentum* doctrine here could hardly be said to be protecting NJ Pure's "objectively-reasonable expectations." Given the breadth of the arbitration clause, the sophistication of the parties, both of whom are insurers, the case law on point, and the nature of the 2007 Contract, it cannot be said that NJ Pure's expectations regarding the meaning of the Service of Suit Clause are objectively reasonable. It would be an unwarranted and unprecedented broadening of the *contra proferentium* doctrine to apply it to the circumstances found here.

Next, Plaintiff cites to two cases that found a service of suit clause permitted certain claims to be litigated, despite the presence of arbitration provisions which

---

[7] I note that there is a factual dispute as to who drafted the 2007 Contract. Plaintiff claims that the 2007 Contract was drafted by the Defendants. Defendants contend that it was the Plaintiff's broker who drafted the contracts. I need not decide this factual dispute, because the question of who drafted the 2007 Contract does not control the outcome.

13

Plaintiff claims to be "almost identical" to the Arbitration Clause at issue here. These two cases are neither persuasive nor precedential. The first, *Transit Casualty Company in Receivership v. Certain underwriters of Lloyd's of London*, 963 S.W.2d 392 (Mo. Ct. App. 1998), dealt with a narrower arbitration provision than the one at issue here. Notably, the arbitration provision in *Transit Casualty* lacked the "as a condition precedent to any right of action hereunder" language found in the 2007 Contract. The arbitration clause in *Transit Casualty* also did not make questions of contract interpretation subject to arbitration as does the Arbitration Clause here. The second case cited by Plaintiff, *Thiokol Corp. v. Certain Underwriters at Lloyd's, London*, No. 96-cv-28, 1997 WL 33798359 (D. Utah 1997), is unpersuasive for similar reasons. The arbitration clause there includes neither the "condition precedent" language nor the language making the clause applicable to the contract's interpretation. These two cases also appear to be against the weight of much more persuasive authorities. *See, e.g.*, *Security Life Ins. Co. v. Hannover Life Reassurance Co. of America*, 167 F. Supp. 2d 1086, 1089 (D. Minn. 2001) (finding neither case applicable because the FAA did not apply to the contract at issue in either case); *Credit Gen. Ins. Co. v. John Hancock Mutual Life Ins. Co.*, No. 1:99-02690, 2000 U.S. Dist. LEXIS 9009, at *10-14 (N.D. Ohio May 30, 2000) (explicitly finding the analysis in *Transit* and *Thiokol* to be "unpersuasive" and rejecting their holdings). In summary, neither *Transit Casualty* nor *Thiokol* controls the outcome here.

      In light of the foregoing, I conclude that the Service of Suit clause does not permit NJ Pure to litigate its claim for money owed in lieu of submitting its claim to arbitration, as requested by Defendants.

## CONCLUSION

The Court finds that the dispute currently before this Court falls under the plain meaning of the Arbitration Clause, and that the Service of Suit clause does not serve as an exception allowing NJ Pure to litigate its claims. The Court hereby grants Defendants' motion to compel arbitration and stays the current proceedings pending such arbitration. The action will be administratively terminated pending the outcome of the arbitration proceeding.


Dated:  April 11, 2013                                   /s/ Freda L. Wolfson
                                                                       Freda L. Wolfson, U.S.D.J.